**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **J.H.,** <br> **Plaintiff,** <br> **v.** <br> **FRANK BISIGNANO,** <br> ***Commissioner of Social Security*** <br> **Defendant.** | **Civil Action No. 25-13612-BEM** |

**MEMORANDUM AND ORDER**

**MURPHY, J.**

Plaintiff J.H. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of Defendant Frank Bisignano, Commissioner of the Social Security Administration ("the Commissioner"), denying her applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits.[1] Before the Court are Plaintiff's motion to reverse or remand the Commissioner's decision and the Commissioner's cross-motion to affirm. For the reasons discussed below, the Court will deny Plaintiff's motion and grant the Commissioner's motion.

## I. Background

The following facts are drawn from the administrative record. Dkt. 8 ("AR").[2]

[1] Consistent with the practice of other courts in this District, the Court identifies Plaintiff by her initials in the above caption.

[2] For clarity, citations in this opinion refer to the internal pagination of the administrative record, rather than the Court's CM/ECF numbering.

**A. Procedural History**

Plaintiff applied for SSDI on November 9, 2021, and SSI on February 17, 2022, asserting that she was unable to work as of November 2, 2019. *Id.* at 17, 220, 222, 229-38. Plaintiff's claim was first denied on February 7, 2023, and again denied upon reconsideration on May 30, 2024. *Id.* at 17, 132, 137, 143, 147. Thereafter, Plaintiff filed a written request for a hearing, *id.* at 17, which was held on February 6, 2025, before an Administrative Law Judge ("ALJ"), *id.* at 17, 45, 47. On March 7, 2025, the ALJ issued a written opinion denying the application. *Id.* at 14–38. Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied her request for review on October 3, 2025, *id.* at 1, making the ALJ's decision final and subject to judicial review.

**B. Plaintiff's Application**

Plaintiff was 46 years old on November 2, 2019, when she ceased "substantial gainful activity." *Id.* at 20, 36. Plaintiff had previously worked as a "management trainee." *Id.* at 36, 73. In her November 9, 2021 application for SSDI and February 17, 2022 application for SSI with the Social Security Administration ("SSA"), Plaintiff alleged disability due to a "disabling condition.[3] *Id.* at 220, 229.

**C. The ALJ Decision**

The SSA has established a five-step, sequential evaluation process for determining whether an individual is disabled and thus entitled to SSI benefits. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Purdy v. Berryhill*, 887 F.3d 7, 10 (1st Cir. 2018) (Souter, J.). The steps are as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time

[3] Although not at issue in the instant matter, Plaintiff provides a summary of medical evidence pertaining to her alleged disabling condition in her opening brief. Dkt. 9 at 5–12.

> period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Purdy*, 887 F.3d at 10 (quoting *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001)).

As relevant here, at Step Two, the ALJ determined that Plaintiff had multiple severe medically determinable impairments ("MDIs"). AR at 20–22. Specifically, the ALJ found the following severe impairments: "lumbar degenerative disc disease status post fusion surgery, chronic migraine headaches, obstructive sleep apnea, and bilateral shoulder degenerative joint disease." *Id.* At Step Three, the ALJ found that none of Plaintiff's severe MDIs met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404. *Id.* at 22–23. At Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC") and found that she had the capacity to perform light work with the notable limitation that she "can stand/and/or walk six hours and sit, stand, and walk up to twenty minutes each at one time uninterrupted and then needs a one-minute break to stretch."[4] *Id.* at 23–24. Finally, the ALJ relied on the testimony of a vocational expert ("VE") to determine that Plaintiff could perform a significant number of jobs in the national economy.[5] *Id.* at 37–38.

## II. Legal Standard

This Court has the power to affirm, modify, or reverse a decision of the Commissioner upon review of the pleadings and record. 42 U.S.C. § 405(g). Such review, however, is "limited

[4] To determine the physical exertional requirements of work in the national economy during disability determinations, the SSA classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567.

[5] The relevant statute delineates that "'work which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." *Brownell v. Berryhill*, 2018 WL 3150222, at *13 (D. Mass. June 27, 2018) (quoting 42 U.S.C. § 423(d)(2)(A)).

to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The ALJ's findings of fact are conclusive when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the Commissioner, not for the doctors or for the courts." *Purdy*, 887 F.3d at 13 (cleaned up).

## III. Discussion

Plaintiff argues that the ALJ erred at Step Five by failing to consider whether Plaintiff's RFC limitations would have a significant erosion on the jobs available to Plaintiff, also known as the "light occupational base," and whether Plaintiff's RFC would require accommodation.[6] Dkt. 9 at 13–16; Dkt. 12 at 1–3. The Court discusses each argument in turn.[7]

At Step Five, the agency bears the burden of showing that there exists a significant number of jobs in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7

[6] The SSA defines occupational base as "[t]he number of occupations, as represented by the RFC, that an individual is capable of performing." SSR 83-10, 1983 WL 31251, at *7. Furthermore, light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" as well as "requir[ing] a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The SSA relies upon "various authoritative publications identify[ing] occupations which exist in the national economy." SSR 83-10, 1983 WL 31251, at *3. In sum, the light occupational base "consists of those unskilled occupations identified at the exertional level in question." *Id.*

[7] Because Plaintiff does not dispute the ALJ's analysis of Steps One through Four—and because the SSA evaluation process is sequential—the Court will not review the ALJ's decisions on the prior four Steps.

(1st Cir. 1982). This burden can be satisfied by relying upon "a matrix of the applicant's exertional capacity, age, education, and work experience," commonly known as "the Grid." *Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.969; Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1–3). The Grid directs the ALJ to a "conclusion as to whether the individual is or is not disabled" when "the facts of the applicant's situation fit within the Grid's categories."[8] *Id.*

However, when a claimant's exertional capacity[9] does not fit neatly within a particular category—and thus, two different disability conclusions are both plausible—"[d]etermining whether a claimant is disabled is a more difficult judgment." POMS § DI 25025.015(D).[10] In such a situation, the ALJ is directed to *not* find a disability where "the claimant has a *slightly reduced* capacity for the higher level of exertion" and conversely find *for* a disability where "the claimant has a *significantly reduced* capacity for the higher level of exertion." POMS § DI 25025.015(D) (emphasis added); *see also* SSR 83-12, 1983 WL 31253, at *2. When the claimant's exertional limitations are "somewhere 'in the middle' in terms of the regulatory criteria," SSR 83-12, 1983 WL 31253, at *3, the ALJ may "use the assistance of a [VE] to

---

[8] When considering the Grid, if "all factors coincide with the criteria of a rule, the existence of such jobs [in the national economy] is established." 20 C.F.R. pt. 404, subpt. P, App. 2 § 200.00(b).

[9] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *1.

[10] The Program Operations Manual System ("POMS") represents "the agency's own interpretation of its regulations and the statutes governing its operations." *Cain v. Berryhill*, 2017 WL 5989387, at *3 n.3 (D. Mass. Oct. 24, 2017) (quoting *Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012)). Though the agency may interpret its own regulations, pursuant to *Loper Bright Enterprises. v. Raimondo*, "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. 369, 412 (2024). Since *Loper Bright*, agency interpretations, such as POMS, "are entitled to respect, but only to the extent that those interpretations have the power to persuade." *Weingel v. Bisignano*, 2026 WL 440437, at *5 n.5 (S.D. Cal. Feb. 17, 2026); *see also Loper Bright*, 603 U.S. at 402 ("In an agency case in particular, the court will go about its task with the agency's 'body of experience and informed judgment,' among other information, at its disposal. And although an agency's interpretation of a statute 'cannot bind a court,' it may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'") (internal citations omitted) (first quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); then quoting *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Relations Auth.*, 464 U.S. 89, 98 n.8 (1983)).

determine which rule most closely approximates the claimant's RFC and vocational factors of age, education, and past work experience," POMS § DI 25025.015(D).

First, the Court turns to Plaintiff's contention that the ALJ failed to consider whether there was a "significant reduction" to the light occupational base. Dkt. 9 at 13–15; Dkt. 12 at 1–2. The ALJ classified Plaintiff as "closely approaching advanced age" with "at least a high school education." AR at 36. For an individual with those classifications, the Grid directs a finding of no disability for a light work exertional level, regardless of transferable job skills. 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1–2. At the hearing, the ALJ determined Plaintiff had the capacity to perform light work with the notable limitation that while she "can stand and/or walk six hours and sit, stand, and walk up to twenty minutes each at one time uninterrupted" she requires "a one-minute break to stretch." AR at 23–24. Consequently, the ALJ was unable to solely rely on the Grid to rule on Step Five given Plaintiff's ability to perform "all or substantially all" of the light work requirements were "impeded by additional limitations." *Id.* at 37. With that determination, the ALJ asked the VE whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity "[t]o determine the extent to which these limitations erode the unskilled light occupational base." *Id.* Defendant contends that the ALJ adequately considered erosion to the light occupational base as "[t]hat is the very reason why the ALJ[] . . . consulted a [VE]." Dkt. 11 at 6–7.

The parties both direct the Court's attention to *Duffy v. Saul* for how to interpret the application of POMS § DI 25025.015(D), specifically where the claimant falls between two exertional capacities. 2020 WL 871576 (D. Mass. Feb. 21, 2020); Dkt. 9 at 14; Dkt. 11 at 6–7; Dkt. 12 at 2–3. In *Duffy*, the plaintiff similarly argued that where a claimant's exertional

capacity falls between two Grid rules directing opposing disability conclusions, "the ALJ *must* apply" one Grid rule or another. 2020 WL 871576, at *7 (emphasis added). However, the *Duffy* court did not limit the ALJ to a binary choice, clarifying that POMS § DI 25025.015(D) "does not address every possible situation when a claimant's capacity falls between rules." *Id.* at *7. As such, the *Duffy* court recognized that "the ALJ did not apply one [G]rid rule over another" and nonetheless determined that the ALJ "properly used the rule as a framework, which was supplemented by the VE's testimony, to determine the effect of [the plaintiff's] limitations on the occupational base." *Id.* at *8 (citing *Gonzalez v. Comm'r of Soc. Sec.*, 2000 WL 1502864, at *1 (1st Cir. Oct. 5, 2000) (per curiam)).

Plaintiff argues the court in *Duffy* erred in articulating POMS § DI 25025.015(D) by allowing the ALJ to omit ruling on whether the claimant's exertional limitation would have "significantly reduced" the light occupational base when the claimant's exertional capacity falls between two rules.[11] Dkt. 9 at 14. After reviewing the POMS statute and regulations, the Court disagrees. The POMS statute and regulations do not require the ALJ to provide an explicit determination regarding whether Plaintiff's RFC would "significantly reduce" the light occupational base. Notwithstanding Plaintiff's argument to the contrary, Dkt. 9 at 13–15; Dkt. 12 at 1–2, the *Duffy* court, when faced with a claimant whose exertional capacity fell in the middle of two rules, properly interpreted POMS § DI 25025.015 by accepting the ALJ's use of the Grid as a framework rather than strictly applying one Grid rule over another, *Duffy*, 2020 WL 871576, at *8. Here, the Court, as did the *Duffy* court, finds the analysis in *Sankhar v. Colvin* compelling. 2015 WL 5664285 (D. Or. Sept. 21, 2015). In that case, the court recognized VE testimony as sufficient to meet the agency's burden when the claimant's RFC falls in the middle

[11] In her brief, Plaintiff references POMS § DI 25025.020(D) instead of § DI 25025.015(D). Dkt. 9 at 14. Based on Plaintiff's argument and the relevant passages from *Duffy*, the Court determines Plaintiff intended to reference § DI 25025.015(D).

of the regulatory criteria. *Id.* at *7 ("The VE's testimony provided the ALJ with job numbers indicating that even with [their] limitation, Plaintiff did not have a significantly reduced capacity for the light level of exertion. The ALJ did not err in applying POMS DI 25025.015.").[12] Accordingly, the Court determines the VE testimony aided the agency in meeting its burden.

Plaintiff also contends that because the VE listed three occupations which could be performed, the ALJ should have found that there was a "significant reduction" in the light occupational base. Dkt. 9 at 14; Dkt. 12 at 1–2. At the hearing, the VE testified that "given all of these factors the individual would be able to perform the requirements of representative occupations such as:" sales attendant, cashier II, and routing clerk. AR at 37. The Commissioner argues that this conforms "exactly" with what ALJs are instructed to do in cases involving an RFC limitation affecting sitting and standing. Dkt. 11 at 7.

Defendant is correct. Here, as in *Duffy*, there is "substantial evidence" and "no error" where three representative occupations the claimant can perform carry the agency's burden at Step Five. *See Duffy*, 2020 WL 871576, at *8; *see also Victoria M. v. O'Malley*, 2023 WL 8867880, at *3 n.3 (D. Me. Dec. 21, 2023) ("This Court has routinely held that a single job available in significant numbers in the national economy is sufficient to meet the Commissioner's burden at Step Five." (cleaned up)).

Relatedly, Plaintiff argues that the 700,000 jobs within the representative occupations the VE identified is an irrelevant figure that does not adequately address the entirety of the

[12] The *Duffy* court also favorably cited to *Coleman v. Berryhill*, 2017 WL 6407476 (E.D. Mo. Dec. 15, 2017). 2020 WL 871576, at *7. *Coleman* further supports the finding that the ALJ does not err in such a circumstance. 2017 WL 6407476, at *8 ("It is clear the ALJ did not conclude that [Plaintiff]'s capacity for light work was either slightly or significantly reduced . . . . That's also why [the ALJ] called the VE . . . . It necessarily follows that [Plaintiff]'s capacity for light work is not significantly reduced since there are jobs that exist in significant numbers in the national economy . . . . Thus, no other explanation was necessary. The ALJ complied with POMS DI 25025.015(D).").

occupational base.[13] Dkt. 12 at 1–2. However, courts within the First Circuit have found that even when the VE estimates substantially less than 700,000 jobs, the agency's burden at Step Five is nevertheless satisfied. *See Vining v. Astrue*, 720 F. Supp. 2d 126, 128 (D. Maine 2010) (citing *Ortiz v. Sec'y of HHS*, 955 F.2d 765, 769 (1st Cir. 1991)) (finding 10,000–11,000 jobs in the national economy to be "reasonable for the [ALJ] to infer that such jobs exist in several regions"); *see also Ortiz v. Comm'r of Soc. Sec.*, 81 F. Supp. 3d 118, 128 (D. Mass. 2015) (finding 80,000 jobs in the national economy to be sufficient).

Plaintiff also argues this case is comparable to *Saeed v. Berryhill*, but the facts warranting remand in that case are not akin to the instant facts. 2018 WL 1243953 (D. Mass. Mar. 9, 2018); Dkt. 9 at 14–15; Dkt. 12 at 2. In *Saeed*, the court ordered remand because the ALJ determined the claimant was "capable of performing light work unless otherwise indicated" after not specifically addressing with the VE "[a] two-hour standing/walking limitation . . . contradict[ing] a finding that a claimant can lift or carry at a light work level."[14] *Saeed*, 2018 WL 1243953, at *10. Here, Plaintiff's RFC limitation does not limit her sitting, standing, and walking requirements aside from an intermittent twenty-minute break to stretch, *see* AR at 23–24, which does not create a similar impediment to other aspects of light work, *see* SSR 83-10, 1983 WL 31251, at *5–6. Furthermore, unlike in *Saeed*, Plaintiff's limitation was specifically addressed by the VE during their testimony. AR at 75–76.

Finally, the Court addresses Plaintiff's claim that the ALJ failed to consider whether her "required five-percent off-task behavior while stretching" necessitated an accommodation.

[13] The VE testified that they estimated job numbers within the representative occupations by "rely[ing] upon the Dictionary of Occupational Titles (DOT), and Job Browser Pro SkillTran system . . . as data sources for his testimony." AR at 37.

[14] As the court in *Saeed* noted, "someone who can perform light work must be able to lift and carry 10 pounds for 2.67-5.33 hours per day. By logical extension, light work requires a person to be on their feet for 2.67–5.33 hours in a day, while lifting and carrying up to 10 pounds in that time." *Saeed*, 2018 WL 1243953, at * 10 (quoting *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 970 (E.D. Mich. 2017).

Dkt. 9 at 15; *see also* Dkt. 12 at 3. First, during the VE's testimony, the ALJ specifically asked if, and the VE confirmed that, Plaintiff could perform the three representative occupations with the every-twenty-minute stretching limitation, along with a "one-minute break." AR at 75–76. Moreover, Plaintiff, who was represented by counsel, did not seek further clarification during the hearing as to any potential accommodation for the representative occupations. *See id.* at 75–76, 80. Courts are loath to revisit issues not originally raised before the ALJ. *Rock v. Astrue*, 2013 WL 1292669, at *11 (D. Mass. Mar. 29, 2013) ("'[I]t could cause havoc, severely undermining the administrative process,' if issues not raised before the ALJ are not considered waived." (quoting *Mills v. Apfel*, 244 F. 3d 1, 9 (1st Cir. 2001))); *see also Sheffield v. Callahan,* 9 F. Supp. 2d 75, 81 (D. Mass. 1998) (finding a failure to pose a proper hypothetical question to the VE where "the plaintiff's representative had a full opportunity at the hearing to ask the [VE] any hypothetical question she deemed appropriate"). Here, where Plaintiff had an opportunity to address the issue during the VE's testimony but opted not to, the argument is waived.

## IV. Conclusion

Based on the foregoing, Plaintiff's motion to remand is DENIED the Commissioner's motion to affirm is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: August 17, 2026